# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

HELEN ALLEN-AMOS,

                Case No: 1:19-cv-1012

            Plaintiff,                McFarland, J.

    v.                              Bowman, M.J.

FORD MOTOR COMPANY, et al.,

            Defendants.

## REPORT AND RECOMMENDATION

Plaintiff Helen Allen-Amos, proceeding *pro se*, paid the requisite filing fee and initiated this employment discrimination action on November 26, 2019 against two Defendants: her former employer, Ford Motor Company ("Ford") and UAW Local 863 ("Local Union").[1]  Ford filed its answer on January 14, 2020.  However, the Local Union responded to the complaint with a motion to dismiss.  Pursuant to local practice, this case has been referred to the undersigned for initial consideration.

When Plaintiff failed to file any timely response to the Local Union's motion, the undersigned directed her to "show cause" why the motion should not be granted.  Plaintiff subsequently was granted an extension of time in which to respond to the motion, and filed a response on March 10, 2020 (Doc. 18), as well as a supplemental response on June 9, 2020 (Doc. 24).  No calendar order has yet been entered in this case. For the following reasons, I now recommend that the Local Union's motion be GRANTED.

---

[1]Because Plaintiff paid the full filing fee without seeking to file in forma pauperis, her complaint was not subjected to initial screening by this Court.  *See generally*, 28 U.S.C. § 1915(e).

## I.      Rule 12(b)(6) Standard for Motion to Dismiss

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of plaintiff's claims for relief, not to resolve contested facts or rule upon the merits of the case. *See Klusty v. Taco Bell Corp.*, 909 F. Supp. 516, 519 (S.D. Ohio 1995).  To avoid dismissal for failure to state a claim for relief, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  While the plaintiff need not plead specific facts, her statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197 (2007) (internal quotation marks and citations omitted).

"When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff." *Gadberry v. Bethesda*, 608 F. Supp.2d 916, 918 (S.D. Ohio 2009).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,127 S.Ct. 1955 (2007), the Supreme Court explained that, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.*, 127 S.Ct. at 1969.  At its outset, however, a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965; *accord Ashcraft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1950 (2009); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998) ("court need not accept as true legal conclusions or unwarranted factual inferences").  Thus, "[f]actual allegations must be enough to raise a

right to relief above the speculative level[.]" *Twombly*, 127 S.Ct. at 1965 (citations omitted). While a complaint need not contain "heightened fact pleading of specifics," it must provide "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Id*. at 1974. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949.

It is true that *pro se* pleadings ordinarily are construed more liberally than those drafted by attorneys. *Erickson v. Pardus*, 127 S. Ct. at 2200 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, no matter how liberally a pleading is construed, the Court will neither "conjure up unpled allegations…nor create a claim for Plaintiff." *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (internal quotation marks and additional citations omitted).

## II.     Allegations of Complaint

Although Plaintiff utilized the complaint form provided to pro se litigants for filing an employment discrimination claim, she left most of that form blank, including the sections labeled "Statement of Claim" and "Relief." (Doc. 1 at 2-3). Thus, in order to discern the allegations of her complaint, the Court reviews the copies of two EEOC Charges attached to the complaint form, as well as several pages of a typed narrative account of her allegations that follow the EEOC documents. (Doc. 1 at 8-10).

The EEOC forms reflect that Plaintiff filed separate charges against both Ford and the Defendant Local Union. In the EEOC Charge against the Local Union, Plaintiff has checked the boxes for discrimination based on race, sex, disability and religion. The Charge form provides the following summary of her claim:

> I.     I am a female, African-American, Muslim, and have a disability. I have complained to no avail about being denied a religious accommodation. I have also filed complaints about being harassed by a Caucasian supervisor,

3

and males using profanity. On or about July 23, 2018, the union failed to represent me and file any grievances.

II. Management is responsible for the above action.

III. I believe I have been denied union representation for complaining about my race, sex, and religion, in violation of Title VII of the Civil Rights Act of 1964, as amended, and in violation of the Americans with Disabilities Act of 1990, as amended.

(Doc. 1 at 6). The EEOC issued Plaintiff a Notice of her Right to Sue on or about August 29, 2019.[2]

In addition to the EEOC forms, Plaintiff's complaint also contains typed allegations that are not numbered, but set forth a narrative account followed by a series of six headings that are reasonably construed as separate claims. In the narrative portion, Plaintiff alleges that she was a "whistleblower" in an employment discrimination case that remains pending in the Northern District of Illinois, Chicago division, *Van v. Ford Motor Co.*, Case No. 1:14-cv-8708. (Doc. 1 at 8).[3] She alleges that she was transferred to the Sharonville Transmission Plant in August 2016, where she alleges she "expressed concerns [about] the same issues that I experienced in Chicago." (*Id.*) She alleges that days after expressing those concerns, she was "informed that my work related restrictions could not be honored" and "was not allowed to work for 20 months." (*Id.*) She alleges that she "reported Race, Religion, Sex, Age Harassment and Discrimination many times" to unspecified persons between August 8, 2016 and July 30, 2018, that she was "denied

---

[2]Plaintiff's closely related charge against Ford contains additional allegations of retaliation based in part upon a suspension she alleges she received on July 23, 2018 "for taking time off work due to my disability." (Doc. 1 at 4). In the Charge against Ford, she refers to an earlier EEOC Charge that she filed against Ford. Similar to her Charge against the Local Union, the last paragraph of her Charge against Ford asserts she was discriminated and retaliated against because of "race, sex, and religion," and in violation of the Americans with Disabilities Act. (*Id.*)

[3]The docket of the Illinois court includes Plaintiff's name among a total of 33 plaintiffs who initially sought but were denied class certification. (*See id.,* Doc. 418, Order of 08/22/2019). The docket reflects two related cases in the same court, identified as Case Nos. 1:15-cv-07563 and 1:19-cv-03827.

benefits from Ford Motor Company that Ford Motor Company and International United Auto Workers negotiated for in the Collective Bargaining Agreement…," and that she "was disciplined for getting treatment for my Service Connected Disability PTSD." (*Id.*) Last, Plaintiff alleges that both Ford "and United Auto Workers officials disclosed my confidential information, statements, and complaints to my predators, harassers and co-workers. Which made me an active Bullseye for many reasons." (*Id.*)

Six headings, construed as separate claims, set off the remainder of the narrative portion of Plaintiff's complaint. The headings or construed claims include: (1) Disability; (2) Breach of Confidentiality; (3) Conflict of Interest; (4) Religion; (5) Constructive Termination; and (6) Retaliation. Only the second, fifth and sixth claims contain modest references to either the Defendant Local Union and/or to the International UAW; the first, third and fourth claims are devoid of any such references.

### III. Analysis of the Union's Motion

### A. Plaintiff's Allegations Against the International UAW Fail to State a Claim against the Local Union

Of the three claims that contain any reference to a Union, many of Plaintiff's allegations do not refer to the Defendant Local Union 863, but instead refer to the "International United Auto Workers" Union ("International UAW"). Noting that the International UAW has not been identified as a defendant in this case, the Defendant Local Union cites to two published cases for the proposition that the International UAW is a separate entity.

> The UAW, as well as all local unions affiliated with the UAW, are governed by the UAW Constitution. The UAW Constitution describes the relationship between the UAW and local unions, identifying the latter as autonomous entities that are separate from the International Union. Local unions have their own elected officers, authority, and responsibilities.

5

In addition to an executive board, the UAW is also staffed by international representatives, referred to within the UAW as "servicing representatives." Servicing representatives are assigned to work with local unions, providing assistance or "service" to them as needed or requested by the local unions. Under the UAW Constitution, servicing representatives do not oversee the affairs of local unions, nor do they review the activities of local union officials. The servicing representatives have no authority to direct a local union on matters of staffing, hours, or pay for local union officers or representatives. Nor do they have the authority to supervise local union officers or representatives in the conduct of their duties, or to appoint or remove them from office.

********

Unless a local union has been placed under an administratorship, which is a rare event, the International Union does not control or supervise the affairs of local unions.

*Phillips v. UAW International*, 149 F. Supp.3d 790, 793 (E.D. Mich. 2016); *see also Clark v. Teamsters Local Union 65*1, 349 F. Supp.3d 605, 629 (E.D. Ky. 2018).

Nothing in either Plaintiff's original response or in her supplemental response addresses this issue. The undersigned finds the case law to be persuasive, and therefore recommends the dismissal of claims against the Defendant Local Union that are based upon allegations against the International UAW as opposed to the Local Union.

## B. Plaintiff Fails to State a Claim Against the Defendant Local Union

The limited allegations against the identified Defendant Local Union also fail to state any claim as a matter of law, for multiple reasons. Plaintiff's response to Defendant's motion to dismiss and her supplemental response largely fail to address the legal arguments presented by the Defendant Local Union in favor of dismissal of the claims that she asserts. Instead, Plaintiff argues both in her response and in her supplemental response that she should be permitted to amend her complaint to allege a brand new claim against the Local Union. Specifically, Plaintiff seeks to amend her complaint in order to include a hybrid claim for the breach of the duty of fair representation

6

under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, based upon the failure of Local Union representatives to file grievances on her behalf.

### 1. Plaintiff's Response/ Construed Motion to Amend Should be Denied

To the extent that Plaintiff's pro se supplemental response is construed as a motion to amend her complaint, it should be denied. The Sixth Circuit defines a hybrid § 301 claim as "the consolidation of two separate but interdependent actions: one against the employer for breach of the collective-bargaining agreement and one against the union for breach of the duty of fair representation." *Robinson v. Central Brass Mfg. Co.*, 987 F.2d 1235, 1238-1239 (6th Cir.1993)

> Before an employee may bring a § 301 claim against an employer for dismissing him in violation of the collective-bargaining agreement, the employee first must exhaust any grievance or arbitration remedies provided in the collective-bargaining agreement. The employee will be bound by the results of that grievance process unless the union representing the employee breaches its duty of fair representation. If the union does breach its duty, then the employee may bring either a § 301 claim against the employer or a claim against the union for breach of the duty of fair representation, or both claims simultaneously. To prevail under any claim, the employee must show both that the employer discharged him in violation of the collective-bargaining agreement *and* that the union breached its duty of fair representation during the grievance process. Therefore, the two claims are often combined in a single lawsuit and referred to as a hybrid § 301/fair representation claim.

*Id.*, 987 F.2d at 1239 (citing *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 163-65, 103 S.Ct. 2281, 2290-91 (1983)).

The statute of limitations for any claim based upon the alleged breach of the duty of fair representation claim is six (6) months. 29 U.S.C. §160(B); *see also DelCostello v. Int'l Broth. Of Teamsters*, 462 U.S. at 155. A hybrid § 301 claim accrues when the employee knew or should have known of the acts constituting either the employer's alleged violation or the union's alleged breach, whichever occurs later. *Robinson*, 987

F.2d at 1239.

Plaintiff referenced the same conduct in the EEOC Charges filed on or about October 2018, reflecting her knowledge of the newly asserted claim not later than the date of that Charge.  In fact, the EEOC Charge itself suggests even earlier knowledge since she alleges that the Defendant failed to file a grievance on her behalf on July 23, 2018.  However, Plaintiff did not file the instant federal complaint until November 26, 2019, and did not seek to amend to include a hybrid § 301 claim until March 10, 2020.  Because the proposed hybrid § 301 claim is clearly barred by the applicable statute of limitations,[4] any amendment would be futile.

Plaintiff's response and supplemental response reflect continued confusion over precisely which entity is a party to this case.  However, the undersigned construes Plaintiff's Supplemental Response as also seeking amendment to add the International UAW as a new Defendant, as well as an Order "requiring Defendant, International UAW, to answer or, alternatively, order Plaintiff to file a[n] amended Complaint.  As support for the addition of the International UAW, Plaintiff cites to exhibits attached to her supplemental response[5] and argues that International UAW representatives have been "named in recent lawsuit as predators themselves," and "have been indicted by the FBI" for various offenses.  (Doc. 18 at 2).   However, Plaintiff filed an EEOC Charge against the Local Union, not the International UAW, and has named only the Local Union as a Defendant.  Based upon her failure to file an EEOC Charge against the International UAW along with other deficiencies discussed below, any construed motion to amend to add the

---

[4]Plaintiff does not assert any basis for equitable tolling of the statute of limitations for her newly proposed § 301 claim, and the record on its face suggests that no such tolling would apply.
[5]The referenced exhibits cannot be considered in the context of the Defendant's Rule 12(b)(6) motion. Although they could be considered in support of Plaintiff's construed motion to amend her complaint, they provide no legal basis for amendment.

International UAW as a new Defendant also should be denied.

### 2. Plaintiff failed to Exhaust her Age Claim Against the Local Union But May Have Exhausted her Retaliation Claim

Plaintiff's EEOC Charge against the Local Union includes checkmarks to indicate she is alleging discrimination based upon race, sex, disability and religion. Notably, Plaintiff did not check the boxes on the Charge form indicating that she alleges discrimination either on the basis of age, under the Age Discrimination and Employment Act ("ADEA"), or for "retaliation" under either Title VII or the ADA.

Defendant argues that Plaintiff's failure to include an age-related discrimination claim or a retaliation claim against the Local Union in any portion of her EEOC charge requires dismissal of any such claims against the Local Union for failure to exhaust administrative remedies. Defendant's argument regarding age-based discrimination is persuasive. *See Thornsberry v. Duke Energy*, Case No. 1:08-cv-267, 2009 WL 3854337 at *2 (S.D. Ohio Nov. 12, 2009) ("Failure to exhaust administrative remedies is an appropriate basis for dismissal of an ADEA action.").

By contrast, the undersigned recommends denial of the Union's motion to dismiss Plaintiff's retaliation claim based upon a failure to exhaust that claim. Although Plaintiff did not check the "retaliation" box on the EEOC Charge form, she does include the following allegation in paragraph III of the form: "I believe I have been denied union representation for complaining about my race, sex, and religion, in violation of Title VII of the Civil Rights Act of 1964, as amended, and in violation of the Americans with Disabilities Act of 1990." (Doc. 1 at 6). The referenced allegation could be interpreted as a clam for retaliation by the Local Union based upon her prior protected complaint activity. *Contrast Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010)

(dismissing retaliation claim where the plaintiff's EEOC charge did not check the retaliation box or make any allegations that could be interpreted as a claim for retaliation).

### 3. Claims that Fail to Include Allegations Against the Defendant

The last three pages of Plaintiff's complaint contain unnumbered narrative allegations, including six headings that are construed as separate claims. Three of those claims, identified by the headings "Disability," "Conflict of Interest" and "Religion," contain no allegations at all that reference *any* discriminatory conduct by the Local Union, its agents, officers, or employees. For example, although Plaintiff did check the "disability" and "religion" discrimination boxes on her EEOC Charge against the Local Union, the limited allegations contained in that Charge do not appear related to disability or religious-based discrimination by the Local Union. And in the complaint filed in this Court, Plaintiff's allegations appear to relate to actions undertaken by her employer, Defendant Ford, rather than the Local Union. For example, Plaintiff alleges the following conduct by an unknown person or persons, most reasonably interpreted as Plaintiff's employer:

> I was placed on No Work Available August 28, 2016 for work injury limitations. I was forced to apply for SSDI January 2018 for my work injury limitation. I was denied April 22, 2018 and returned to work April 26, 2018. I was placed on a job that was also available August 2016.

> I went on work related stress leave July 23, 2018. I was forced to apply for SSDI January 2019 for work related stress, approved May 2019.

(Doc. 1 at 8).

In her "Conflict of Interest" claim, Plaintiff alleges that "[t]here is no Conflict of Interest Clause or Common Sense used to protect me, when the person/persons I complained about are directly included in the process of investigation." (*Id.*) To the extent that this states any claim at all (a debatable proposition), it fails to allege any conduct by the Defendant Local Union.

Last, in the narrative allegations under the heading "Religion," Plaintiff alleges that two of Ford's "Labor Relations Representatives" improperly "ignited my Christian co workers['] hostility towards me for being Muslim, by attaching a false statement to me." (*Id.* at 9). The Local Union persuasively argues that this claim, like the claims for "disability" and "conflict of interest," appears to be directed only at agents or employees of Defendant Ford. For that reason, the claims of "disability," "conflict of interest" and "religion" all fail to state any claim against the Union.

### 4. Dismissal of Other Claims for Failure to Exhaust

The narrative portion of Plaintiff's complaint in this Court includes three additional claims (Breach of Confidentiality, Constructive Termination, and Retaliation) that contain modest references to either the Defendant Local Union or the non-party International UAW. However, the Defendant argues persuasively that the first two of the referenced claims should be dismissed based upon Plaintiff's failure to include any similar allegations or claims in her EEOC Charge against the Local Union.

For instance, in the claim captioned as "Breach of Confidentiality," Plaintiff alleges that:

> Statements and complaints made by me expecting confidentiality, were shared with Salary employee's [sic] and UAW officials, some of whom I had previously complained about. Shared information created false narratives about me that put my safety at risk. Subliminal threats were active. Ford Motor Company's policy, to share statements made by hourly employee's [sic], with Salary Personal whom you have complained about, is careless and intimidating.

(Doc. 1 at 8). None of these "Breach of Confidentiality" allegations appear in Plaintiff's EEOC Charge against the Defendant Local Union.

Plaintiff's claim for "Constructive Termination" includes the following allegations:

A hostile work environment created by Ford…and allowed to exist by

11

International United Auto Workers and UAW Local 863.

I was reinstated to active employment April 26, 2018.

All benefits should have been reinstated according to the Collective Bargaining Agreement negotiated by Ford…and International United Auto Workers.

My seniority allows for all benefits reinstated upon being reinstated to active employment following a medical leave of absence.

According to the Collective Bargaining Agreement, negotiated by Ford…and International United Auto Workers, employee's [sic] are not to be penalized for any treatment related to Service Connected Disabilities.

According to the [CBA]…my seniority entitled me to 160 hours of Vacation/Personal time upon being reinstated. I requested my hours many times from April 2018 to November 2019.

Hours being denied, attributed to me being disciplined for getting treatment for my Service Connected Disability. I was charged with AWOL's (Absent With Out Leave) for visits to treat my PTSD and eventually I was given days off.

(*Id.*)

The doctrine of administrative exhaustion limits litigants to allegations that are "reasonably related" to their EEOC charge. *See Younis*, 610 F.3d at 361. Plaintiff's EEOC Charge against the Union asserts only that she complained "about being harassed by a Caucasian supervisor, and males using profanity." Even construed liberally, Plaintiff's prior EEOC Charge against the Defendant Local Union does not appear to relate to the new allegations of "breach of confidentiality" or "constructive termination" and/or "hostile work environment" claims that Plaintiff now pleads against the Defendant Local Union in the above-captioned complaint. For the same reasons, the Local Union is entitled to dismissal of any Title VII or ADA claims that relate to her alleged entitlement to benefits and paid time off under the CBA, as well as to discipline allegedly imposed upon her by Ford for absenteeism. Plaintiff did not include any allegations reasonably relating

to benefits, paid time off, or discipline in her EEOC Charge.  Therefore, to the extent that the complaint is construed as attempting to raise new and unrelated claims against the Local Union, the Defendant is entitled to dismissal of the "breach of confidentiality," "constructive termination" and/or "hostile work environment" claims based upon Plaintiff's failure to exhaust her administrative remedies.

However, the undersigned does not agree with the Local Union's assertion that the sixth claim set forth by Plaintiff, captioned as "Retaliation," suffers from the same technical defect.  In that claim, Plaintiff alleges that the "Defendants deliberately targeted her and similarly situated hourly employee's [sic] by utilizing a 'No Work Available' process in addition to other similar processes orchestrated by Ford…and Contracted Consulting firms that target, deny, and deprive certain employee's benefits in retaliation for filing prior discrimination complaints."  (Doc. 1 at 9-10, emphasis added).  And as discussed, despite failing to check the "retaliation" box on her EEOC Charge, she included an allegation in that Charge that could be liberally construed as alleging retaliation by the Local Union.

Despite the arguable exhaustion of her retaliation claim, however, her federal complaint repeatedly refers to the International UAW and not the Defendant as participating in the alleged "retaliation" through a "pattern" of behavior.  As previously discussed, based upon the absence of allegations against the Defendant Local Union – a separate entity – Plaintiff's retaliation claim remains subject to dismissal.  (*See* Doc. 1 at 9-10, alleging in part that "The retaliation has caused the International United Auto Workers to violate the [CBA] and negate their duty to protect its members and allow older members to be harassed and placed on early SSDI instead of FMLA.  This pattern of behavior by International United Auto Workers assist[s] Ford…to negate their Pension liabilities.").  As discussed below, the claim also consists of only the most conclusory

13

allegation against the Local Union, and fails to state a claim as a matter of law.

### 5. Failure to Plead a Prima Facie Case Under Title VII or the ADA

In addition to the reasons already stated for dismissal, Defendant persuasively argues that its motion to dismiss should be granted because Plaintiff fails to plead a prima facie case under either Title VII, the ADA, or any other possible civil rights theory.

### a. Hostile Work Environment

In her federal complaint, Plaintiff alleges that the Union "allowed" a hostile work environment to exist. Leaving aside the question of whether the Sixth Circuit would recognize a claim against a union for "allowing" a hostile work environment, Plaintiff has failed to state the prima facie elements of a hostile work environment claim in this case. In order to establish a prima facie case of hostile work environment, a plaintiff must show:

> (1) Plaintiff belongs to a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based on [status in a protected class]; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known about the harassment and failed to take action.

*Phillips v. UAW International*, 854 F.3d 323, 327 (6th Cir. 2017).

Plaintiff has alleged that she belongs to a protected class, but has failed to include allegations that would be sufficient to establish any other element of her claim. For example, although she alleges that Christian Caucasian co-workers were "angry" and "hostile" regarding her request for a safe place to pray, she does not include any other facts that would support her conclusory allegation, and does not otherwise explain the basis for her allegation that the co-workers were "angry" and/or "hostile." Plaintiff also fails to include any allegations that could reasonably be construed to support the theory that any harassment that she experienced from the Local Union was due to her religion, sex, race, or disability. She also fails to allege facts supporting a claim that the alleged

14

harassment by the Local Union affected any term, condition, or privilege of her employment.  Last but not least, Plaintiff has pleaded no facts that allege the Defendant's knowledge of the alleged harassment.  She does not allege that she reported the harassment based on her status in a protected class to the Local Union, or provide other information that would suggest that the Local Union should have known of the alleged harassment, had a duty to take action, and failed to take action.

### b. Constructive Termination

Plaintiff uses the term "constructive termination" in her complaint, but she does not allege that she <u>resigned</u> from her employment from Ford.  Resignation is a fundamental element of a constructive discharge or constructive termination claim.  *Moore v. KUKA Welding Sys. v. Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999) (noting that "the employee must actually quit" in order to state such a claim).  This singular deficiency supports dismissal of any claim for constructive termination against the Defendant Local Union.  *See also Russell v. CSK Auto Corp.*, 739 Fed. Appx. 785, 794 (6th Cir. 2018) (evaluating construction discharge as an "adverse action" in the context of an FMLA retaliation claim).

### c. Failure to File a Grievance or other Retaliation Claim

The undersigned construes Plaintiff's EEOC Charge against the Local Union to generally allege that the Defendant Local Union may have retaliated against her in some way by failing to file one or more grievances on July 23, 2018.  (Doc. 1 at 6).  Plaintiff's general allegation in the EEOC Charge fails to provide any factual detail at all relating to the alleged grievances.  (*Id.* at 6).  A union's statutory duty of fair representation does not oblige it to take action on every grievance brought by every member. *Vaca v. Sipes,* 386 U.S. 171, 191–92, 87 S.Ct. 903 (1967).

Plaintiff's federal complaint includes a few additional "retaliation" allegations, not against the Defendant, but against the non-party International UAW. (Doc. 1 at 9). As discussed above, Plaintiff includes other allegations in the narrative portion of her complaint relating to her alleged entitlement to seniority, vacation and paid time off, but fails to allege that the Defendant Local Union failed to file a grievance on those issues.

Even if the undersigned construes Plaintiff's federal complaint as alleging that the Defendant Local Union failed to file a grievance based upon some employment issue in violation of Plaintiff's civil rights, Plaintiff has failed to plead sufficient facts to state a civil rights claim. To establish a *prima face* case against the Local Union under Title VII for failing to file a grievance, Plaintiff must show that (1) her employer violated the collective bargaining agreement with respect to Plaintiff; (2) the Local Union permitted the violation to go unrepaired, thereby breaching the Local Union's duty of fair representation; and (3) the Local Union's actions were motivated by discriminatory animus based upon Plaintiff's protected class. *See Winpye v. IAM*, Case No. 1:11-cv-845, 2012 WL 1340363 at *3 (S.D. Ohio April 17, 2012) (internal citation omitted). Where, as here, the plaintiff fails to plead *any* facts that would suggest that the Defendant's failure to file one or more grievances was motivated by animus toward Plaintiff based upon her protected class, then the claims are properly dismissed pursuant to Rule 12(b)(6) for failure to state a claim. *Id.* at **3-4 (dismissing claim for failure to pursue a grievance when plaintiff included only "vague and unsupported allegations" and failed to provide any facts supporting his allegation that the union was motivated by racial animus); *Dille v. Laborers' Local 310*, 2014 WL 6473606 at *3 (N.D. Ohio Nov. 18, 2014) (dismissing claim against union when plaintiff did not allege "material facts that would support a plausible suspicion that the union pursued a similar grievance filed by [members outside the protected class]

16

more fully than it pursued his grievance.").

Like the plaintiffs in *Wimpye* and *Dille*, Plaintiff has failed to include any allegations that the Defendant Local Union chose not to file grievances because of her sex, race, religion, or disability. She does not offer any argument in her response or supplemental response that would alter this conclusion. Although she alludes to new allegations against both International UAW officials and one or more Local Union representatives, the new allegations still would fail to state any claim that the Local Union acted based upon its discriminatory animus. (*See, e.g.*, Doc. 18 at 3, complaining that "[i]if the Union had represented me…, I would not have had to file a charge against Ford or the Union which lead [sic] me to obtain a Notice Of Right To Sue for Title 7 Violations. Eric Gadd and Jim Jones' refusal to assist me is why I filed a lawsuit that includes the Local UAW 863."). Thus, not only are there no factual allegations that indicate any discrimination by the Defendant Local Union, but her arguments in response to the Defendant's motion only underscore her inability to state such a claim.

The few vague and conclusory allegations that Plaintiff does include against the Local Union are insufficient to state a claim under any theory, including under the traditional burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S .792, 802 (1973). Under *McDonnell Douglas*, a plaintiff must generally show that (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position in question; and (4) she was either replaced by someone outside the protected class or was treated differently than a similarly-situated, non-protected employee. In addition to the deficiencies noted, Plaintiff has failed to plead any facts that would suggest that she was treated differently by the Local Union than a similarly-situated, non-protected employee.

17

In short, Plaintiff's allegations against the Local Union fail to state any discrimination claim as a matter of law based upon race, sex, disability or religion. Other than asserting she is a female, a Muslim, and African-American (facts establishing her protected class but nothing else), Plaintiff does not plead any facts that set forth directly, or that reasonably could be construed as, discrimination by the Local Union. *Compare generally, Peeples v. City of Detroit*, 891 F.3d 622, 636-638 (6th Cir. 2018) (holding that a breach of the duty of fair representation is not a required element of a Title VII claim against a union, where plaintiffs presented evidence of union's discriminatory animus through testimony by city employee that the union wanted to "protect the white boys" from being laid off).

### d. Retaliation

As with her other construed claims, Plaintiff's "retaliation" claim is comprised of no more than conclusory allegations. A prima face case for retaliation under Title VII or the ADA requires a plaintiff to establish the Defendant knew of protective activity and took adverse action against her. The adverse action must have been causally linked to Plaintiff's protected activity. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763m 775 (6th Cir. 2018) (citing *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2015)).

Plaintiff's original complaint includes no allegations at all that she engaged in protected activity that was known to the Defendant Local Union. Plaintiff does not allege that she informed the Local Union of any prior civil rights complaints concerning alleged discrimination. In addition, she fails to allege that the Local Union (as opposed to Ford) engaged in a materially adverse action that had a causal link to some protected activity. Thus, to the extent Plaintiff is attempting to state a claim of retaliation under Title VII or the ADA against the Defendant Local Union, she has failed to do so as a matter of law.

Plaintiff's "Retaliation" claim also fails to state a claim under any other possible legal theory.  Plaintiff briefly references the Family and Medical Leave Act ("FMLA"), alleging that "Ford…and International United Auto Workers, jointly, collaboratively denied and deprived plaintiff her full rights to Full Retirement Benefits, ADA and FMLA" and that "retaliation has caused the International United Auto Workers to violate the [CBA] and negate their duty to protect its members and allow older members to be harassed and placed on early SSDI instead of FMLA.  This pattern of behavior by International United Auto Workers assist[s] Ford…to negate their Pension liabilities."  (Doc. 1 at 9-10).  In addition to her repeated references to the International UAW rather than to the Defendant, Plaintiff's cursory references to the FMLA are insufficient to state any claim against the Defendant.

### e.  Failure to Accommodate Religion

In order to establish a prima facie case for the denial of religious accommodation, a plaintiff must show:

> (1) he holds a sincere religious belief that conflicts with an employment requirement; (2) he has informed the employer about the conflict; and (3) he was discharged or disciplined for failing to comply with the conflicting employment requirement.

*Reed v. Int'l Union, UAW*, 569 F.3d 576, 579-580 (6th Cir. 2009) (quoting *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007)).  In her EEOC Charge, Plaintiff alleges that she was "denied religious accommodation."  However, she does not allege that she complained to the Defendant Local Union that she was being denied religious accommodation by Ford, nor does she allege that the Local Union itself participated in any way in the denial of religious accommodation.   She also fails to include allegations to support other essential elements of her claim, such as that her religious beliefs conflicted with an employment

requirement, that she informed the Local Union of such a conflict, or that she was disciplined or discharged for failing to comply with the employment requirement that conflicted with her religious beliefs.  Therefore, Plaintiff's allegations fail to state a claim of denial of religious accommodation against the Defendant.

IV.    **Conclusion and Recommendations**

For all of the reasons stated, Plaintiff's asserted and construed claims against the Defendant Local Union fail to state any claim as a matter of law.  Plaintiff's proposed amendments, construed as a motion to amend, also fail to state any claim.  Accordingly, **IT IS RECOMMENDED THAT** the motion filed by Defendant UAW Local 863 (Doc. 10) be **GRANTED**, and that all claims against the Local Union be **DISMISSED**.  In addition, to the extent that Plaintiff's response and/or supplemental response are construed as a motion to amend to add a new § 301 claim against the Defendant Local Union and/or to add the International UAW as an additional defendant, the construed motion to amend also should be DENIED.


 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

HELEN ALLEN-AMOS,

                                                               Case No: 1:19-cv-1012

                     Plaintiff,                                    McFarland, J.

     v.                                                        Bowman, M.J.

FORD MOTOR COMPANY, et al.,

                     Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).